## SUPREME COURT.

Jas. Shoemaker agt. John H. McKee and Mary H. McKee.

A *wife* may be a witness in her own behalf in an action, although her husband be joined with her as a party.

Section 399 of the Code is sufficiently comprehensive to authorize the wife to be a witness in her own behalf, and the husband in his own behalf, whether they be co-plaintiffs or co-defendants, or whether the action be brought by or against the other.

*Broome General Term, May,* 1860.

*Present,* Mason, Balcom *and* Campbell, *Justices.*

This action was brought to set aside a deed of a lot of

land, on which there was a house, situated in the town of Veteran, Chemung county. The deed was executed by Solomon Bennett, in 1856, to the defendant, Mary H. McKee, the wife of the other defendant, John A. McKee. The plaintiff alleged in his complaint, that this lot of land was paid for by John A. McKee, and that the deed of it was taken by his wife, and in her name to hinder, delay and defraud the creditors of said John A. McKee. The plaintiff signed two promissory notes, as surety for the defendant, John A. McKee, on which he and said John were sued, and judgments were obtained against them. The plaintiff paid the persons who obtained said judgments, what was due on them, and took assignments of them to himself. He afterwards issued executions on them, which were returned unsatisfied. He then instituted this action, as a judgment creditor of said John A. McKee, to set aside the aforesaid deed as fraudulent, and to obtain satisfaction of said judgments out of the land conveyed by said deed. The defendants answered jointly, and denied the allegations of fraud in the complaint. They set up as a defence that the defendant, John A. McKee, obtained a land warrant from the United States, for services as a soldier in the war of 1812, and let his wife have it for a debt he owed her for property that came to her from her father; that he, John A. McKee, located land under said warrant, for the benefit of his wife, and received a deed or patent therefor from the United States in his own name, but for the benefit of his wife; and that the land thus obtained was conveyed to Bennett for the lot in Veteran, that the latter conveyed to Mrs. McKee.

The action was tried before a referee. Mary H. McKee was offered as a witness *in her own behalf*. The plaintiff objected to her being sworn or testifying as a witness in the cause, on the ground that she was the wife of the defendant, John A. McKee, and therefore could not be a witness or testify in the cause. The referee overruled the

objection, and Mrs. McKee was sworn as a *witness* in her own behalf, and gave evidence that showed, or tended to show, that the lot of land in Veteran was paid for with property that equitably belonged to her. The referee decided that the defendants were entitled to a judgment against the plaintiff for costs. Judgment was entered on the referee's report against the plaintiff for costs, and he appealed therefrom to the general term of the court.

THURSTON, HART & BENN, *for plaintiff.*
DUNN, SPAULDING & BABCOCK, *for defendants.*

By the Court, BALCOM, Justice. No question has been raised as to the right of the plaintiff to maintain the action as a judgment creditor. It seems to be conceded by the defendant's counsel that his rights are the same they would have been if he had recovered the judgments in his own name against the defendant, John A. McKee, and issued executions on them against his property, which had been returned unsatisfied; and the case shows that this much must have been admitted on the trial.

It does not appear whether John A. McKee obtained his land warrant from the United States, under the act of congress of September 28, 1850, or the act that was passed in 1855; and I presume it is immaterial under what law of congress it was obtained; for the case fails to show that the defendants have at any time insisted (and they do not now insist) that the warrant or land located under it could not be taken to satisfy the debts, for which the plaintiff's judgments were recovered, by reason of the provision in section four of the act of 1850, or by reason of any provision in any other law of the United States.

The plaintiff's counsel insists that the referee erred in swearing Mrs. McKee as a witness in her own behalf, and permitting her to testify in the cause, for the reason that her co-defendant, John A. McKee, was her husband. I will remark, in the first place, that I do not think she

should have been excluded on the score of public policy. There is express authority in the Revised Statutes for the examination of wives as witnesses against their husbands by creditors, in proceedings by insolvents, to obtain discharges from imprisonment or from their debts. The conservative authors of those statutes did not suspect that the examination of wives against their husbands in such proceedings, would destroy the peace or happiness of the families of insolvents. They innovated upon the old rule that excluded the wife from testifying as a witness against her husband; and it is presumed they had no fears that her admission in such proceedings would cause implacable discord in families. (*See* 5 *Seld.*, 157, *for the old rule.*) If it.is safe or politic to permit wives to be witnesses in such proceedings, I am unable to perceive why it is not also safe and politic to allow them to be witnesses in actions to which they and their husbands are parties, especially when they have greater interests in the controversies than their husbands, and the adverse parties may be witnesses against them.

It cannot be denied but that section 399 of the Code is sufficiently comprehensive to authorize the wife to be a witness in her own behalf, and the husband in his own behalf, whether they be co-plaintiffs or co-defendants, or whether the action be brought by one against the other. I have not doubted at any time since this section was changed to its present form, but that the *real parties* to actions, when husband and wife, are competent witnesses either for the adverse parties or for themselves. The only exception contained in this section to parties being witnesses for themselves is, that a party shall not be a witness in his own behalf unless the person in interest on the other side is living, nor when the opposite party shall be the assignee, administrator, executor, or legal representative of a deceased person; and there is no prohibition in any part of the Code against the husband or wife being a

witness in his or her own behalf, when joined as plaintiffs or defendants, or when the action is brought by one against the other. It seems to me if the legislature intended to exclude the husband or wife in any case, because he or she was husband or wife, they would have so declared; for they had previously enacted section 114 of the Code, in regard to suits being brought by and against husband and wife, and by one against the other. They must, therefore, have had the fact in mind, that husbands and wives were to be joined as parties to suits, and could sue each other, when they enacted that " a party to an action may be examined as a witness, at the instance of the adverse party, or of any one of several adverse parties " (*Code*, § 390); and also when they declared that " *a party to an action or proceeding may be examined as a witness in his own behalf, the same as any other witness.*" (*Code*, § 399.) I think the conclusion is irresistible, that the legislature intended to place husbands and wives, when parties to actions, on the same footing of other persons, as to being witnesses in their own behalf or for the adverse party; and that if such had not been the intention of the legislature, they would have excepted them from the operation of the general language of the sections above quoted. The innovation that makes any party to an action a competent witness for himself or his adversary is as great as that which trenches upon the rule that prohibited the husband and wife from being witnesses for or against each other. The legislature undoubtedly thought it was no more dangerous to permit wives to be witnesses, when parties to actions with their husbands, than to declare them *feme soles* in regard to the ownership and management of property. I think no greater evil will flow from husbands and wives being witnesses in their own suits, than arises from their suing and being sued with others, or suing each other; and I do not doubt but that the legislature intended to confer, and has conferred on them, the right that is

secured to other persons, of establishing their cases when parties to actions, by their own testimony. It is undisputed that the plaintiff was a competent witness for himself in the case at bar; and I must say if the legislature has failed to provide a law that authorized Mrs. McKee to testify for herself in the action, they have not carried out the spirit of their acts for the " protection of the property of married women." If the law has not secured this privilege to Mrs. McKee, as against the plaintiff, then her rights are not protected, but are trenched upon by the opening of the mouth of her adversary, as a witness against her, while her own remains closed. Besides, if she was incompetent to testify in the cause, so was her husband.

I am so well convinced that section 399 of the code, as it now exists, authorizes husband and wives, when parties to actions, to be witnesses for themselves, I must hold that Mrs. McKee was properly admitted as a witness in her own behalf in this case, notwithstanding the very able special term opinions to the contrary, in 26 *Barbour*, 612 ; 15 *Howard's Practice Reports*, 165 *and* 169.

There is no other point in this case that calls for discussion. The judgment in the action should therefore be affirmed, with costs.

Decision accordingly.

Note.—Section 399 of the Code has been amended since the above opinion was written. (*See Laws of* 1860, *and* 2d *ed. of Howard's Code, page* 633.)