LEONARD, J.—The opinion of the presiding judge is correct, I think, according to the legal construction of statutes; though the costs for term-fees in the Court of Appeals seem to have been lost sight of by the framers of the amendment.

---

# BIHIN *a.* BIHIN.

*Supreme Court, Second District; General Term, Oct.,* 1863.

TRIAL BEFORE REFEREE.—ADMISSION OF EVIDENCE.—RESERVING DECISION.—LIMITED DIVORCE.—STATUTE OF LIMITATIONS.—CRUEL AND INHUMAN TREATMENT.—TESTIMONY OF WIFE.—WITNESSES.—FORM OF OBJECTION TO EVIDENCE.

Where competent evidence has been received, subject to exception and to future decision as to its admissibility, an exception to this conditional admission becomes unavailable, in case the final decision is in favor of retaining the evidence.

---

* Reported, *Ante,* 15.

Bihin *a.* Bihin.

Cruel and inhuman treatment, to justify a limited divorce, need not consist of injury to the person of the complainant.

Thus, a husband who, in presence of his wife, and in spite of her entreaties, unmercifully beats her child, inflicts an injury to her feelings, which is cruel and inhuman within the meaning of the statute.

What misconduct authorizes a limited divorce.*

The defendant in an action for a limited divorce, who offers to prove in his justification ill-conduct of the plaintiff, will be restricted to proof of what preceded, or was contemporaneous, with his own cruelty or misconduct.

Section 74 of the Code of Procedure,—which provides that the objection that an an action was not commenced within the time limited can only be taken by answer,—is applicable to actions for limited divorce.

---

* In CONKLIN *a.* CONKLIN (at a special term of the Supreme Court, in the first district, in July preceding), it was *Held,* that demeanor calculated to provoke annoyance, discontent, and disgust, was not alone enough to authorize a judgment of separation, especially where such conduct was practised by both parties.

CLERKE, J.—Separations from bed and board forever, or for a limited time, are authorized by the laws of this State in cases, 1st, of cruel and inhuman treatment by the husband of his wife ; 2d, such conduct on the part of the husband towards his wife as may render it unsafe and improper for her to cohabit with him ; 3d, the abandonment of the wife by the husband, and his refusal or neglect to provide for her. It is also provided that the defendant in any such suit may be permitted to prove in his justification the ill-conduct of the complainant ; and on establishing such defence to the satisfaction of the court, the bill shall be dismissed.

In the case before me, although I see very clearly if love, or even any considerable degree of ordinary affection, at any time influenced the intercourse of these parties towards each other, that it no longer exists, but rather distaste and estrangement ; yet, on a careful consideration of the testimony, I do not deem myself authorized to grant the prayer of the complaint. I have no doubt that both have demeaned themselves, each towards the other, in a manner calculated to provoke mutual annoyance, discontent, and even disgust. This is one of those cases, too numerous, I fear, where affection no longer exists, and where the blessed spirit of patience and forbearance has deserted the unhappy pair, nothing remaining but unrest, dissatisfaction, and the total want of urbanity. But this does not authorize me to decree a separation between these parties. The law, whether wisely or unwisely it does not become me to say on this occasion, affords no relief in minor instances of matrimonial strife. It favors the indissolubility of the marriage contract, and no treatment can be a cause even for separation, except where the treatment is absolutely cruel and inhuman, or where it is such as to render it unsafe and improper for the wife to cohabit with the husband. I do not believe that the treatment of the defendant to the plaintiff was cruel and inhuman, or such as to render it unsafe or improper, though probably unpleasant, for her to cohabit with him. Besides, I cannot disregard the testimony of the son of the parties, who, though of tender age, is quite old enough to be conscious of the nature of an oath, and he positively swears that he saw his mother throw a glass tumbler at his father. Although she denied this on her examination, I think the boy's testimony is more reliable.

The complaint should be dismissed.

Thus, where the complaint in such an action averred acts of cruelty, committed more than ten years prior to the commencement of the action, with particulars of time, and the defence of the Statute of Limitations was not interposed in the answer,—*Held*, that evidence of such cruelty was admissible.

A referee appointed to hear and determine an action for limited divorce, has the same power which the court would have to provide in the judgment for the wife's maintenance.

Judgment is properly entered upon his report without confirmation.

Husband and wife cannot be witnesses on their own behalf for or against each other, except so far as, by the rule of court in respect to divorce cases, the restriction has been relaxed in favor of the wife, in cases of cruel treatment by the husband, in the absence of any other witness competent to testify.

Where a wife's testimony as to cruel and inhuman treatment by her husband is offered in an action for limited divorce, an objection that a third person was present is insufficient : it should also be suggested that the third person is competent to testify.


Appeal from a judgment of limited divorce, containing provisions for the wife's support.


This action was brought by Sarah Anna Bihin against John A. Joseph Bihin.  The plaintiff and defendant intermarried in 1849, at the city of New York; were then inhabitants of the State, and were so at the commencement of this action. They proceeded the first year of their marriage to Europe, resided at Limburg, Belgium, and resided there three years. Returned to Philadelphia, Pennsylvania; afterwards resided in Queens county.  The action was commenced in 1861.  It was tried before a referee in the summer of 1862.  The plaintiff gave evidence of various acts of alleged ill usage, both in Belgium and Pennsylvania, which were objected to as being out of the State, and many of them barred by the Statute of Limitations.  The answer did not set up this statute.  The referee admitted the evidence.  The plaintiff was examined as a witness.  The defendant's offer to be examined as a witness was rejected.  There was evidence in the cause, from two witnesses besides plaintiff, of harsh and opprobrious language, and threats to commit violence ; and of great infirmity of temper, which was the more terrifying from the fact that the defendant was seven feet eight inches in height.  He had been exhibited in public as an object of curiosity, for years.  The referee made his report in favor of plaintiff.  Judgment was entered up without any application to the court, or confirmation of the referee's report.

The judgment adjudicated as well on the alleged real and personal estate of the plaintiff, as upon the question of divorce. The defendant excepted to the report, and appealed from the judgment, or decree.

*F. H. B. Bryan,* for the appellant.—I. The ruling of the referee, to reserve his decision as to the admissibility of certain evidence, was erroneous. (*Code,* § 272; Allen *a.* Way, 7 *Barb.,* 585; 10 *Johns.,* 128; 13 *Ib.,* 350; 16 *Ib.,* 89.) If the evidence was improperly admitted, it is error.

II. The referee erred in excluding the question as to the residence of the plaintiff, offered with a view to show her improper course of life and the object of her suit. (*Roscoe on Ev.,* 3 ed., 174, 175, 184; 4 *Esp.,* 242; Candell *a.* Pratt, *M. & M.,* 108; 1 *Barb. Ch.,* 318; 4 *Ib.,* 217.)

III. The Statute of Limitations may always be insisted on in equity, at the hearing, as matter of evidence. (3 *Bro. C. C.;* 2 *Cow. Notes to Ph. Ev.,* 351.) Even where no answer is interposed, the Statute of Limitations is a bar to the testimony. (Moulton *a.* Moulton, 2 *Barb. Ch.,* 309.) The objection to the question as to acts of defendant in Belgium, was well taken. The question embraced a series of acts out of the State, and barred by the Statute of Limitations. The objection to question as to acts of cruelty to Joseph, the son, should have been sustained. No such charge is made in the complaint, nor could the referee reserve his decision. The objection as to evidence of the separate estate of the plaintiff, with a view to found a judgment on it in this action, was properly taken.

IV. The plaintiff was, improperly, allowed to testify to acts occurring between her and her husband, at which a witness was present. This was a violation of the rule under which the referee admitted her to testify.

V. The referee erred in excluding the defendant, a party to the action, as a witness in his own behalf. Section 399 of the Code (prior to amendment of 1862), expressly provided for the examination of a party to the action. It designated that communications made between husband and wife shall not be required to be disclosed. This left the examination of either party open on all other subjects. (Chamberlain *a.* People, 23 *N. Y.,* 85; Marsh *a.* Patten, 30 *Barb.,* 508. Compare Brown

*a.* Richardson, 20 *N. Y.*, 472, as to mode of objecting to testimony of witness.)

VI. The decree in this cause was entered up without any application to the court, and under section 272 of the Code. 2 Rev. Stat., 147, § 54, provides for the decree being made by the court. Section 57 provides, that upon decreeing a separation, the court may make such further decree as the case may require. Decrees of divorce are to be made by the court. (1 *Barb. Ch.*, 610.) A report to found a decree on a decretal order must be confirmed. (*Ib.*, 550.)

VII. The decree adjudges defendant to deliver plaintiff possession of the farm in North Hempstead, and such personal property therein as belonged to her. This decree is erroneous. It pronounces on matters which were not, and could not be embraced in the issue. No evidence of the ownership of personal property by plaintiff was offered. These causes of action could not be united under section 167 of Code. The relief demanded in the complaint does not ask for possession of the estate.

*Charles Edwards*, for the respondent.--I. The plaintiff had a right to commence far back with acts of cruelty and continue them on, in order to show repeated and systematic misconduct. If we had stood upon old and insulated acts, the defendant could have set up the Statute of Limitations. He must do so, in order to raise a bar to such matter. (*Code*, §§ 74, 97.)

II. The answer admits marriage, inhabitancy, and birth of children, and then has only this: " And said defendant denies each and every other allegation, matter, and thing, in said complaint contained." There is no counter-charge of misconduct on the part of the wife; while the complaint has specific charges, satisfying thus the statute and decisions. (2 *Rev. Stat.*, 146, § 50; Hopper *a.* Hopper, 11 *Paige*, 46; Whispell *a.* Whispell, 4 *Barb.*, 217.) The defendant ought to have met each charge, for they present the matter in issue. (Codd *a.* Codd, 2 *Johns. Ch.*, 224; Germond *a.* Germond, 6 *Ib.*, 347.)

III. The soundest exposition of section 399 of the Code, will be that which keeps wife and husband, in divorce cases, from its provisions. The present is not such a case as will justify the

court in inequitably helping such a husband as we have here. See Chamberlain *a.* People (23 *N. Y.*, 85, 90),—but the point was really not passed upon by the court. The amendment to section 399 of the Code, made 1862, applies. It is true that the words of the amendment are sweeping: but it is respectfully insisted that this provision does not do away with disability arising from a peculiar position, as that of husband and wife, although it otherwise allows all persons not under such disability to be witnesses in their own actions. The incompetency as to a wife or husband, is an incompetency from other causes than being a party to the record. Before the last amendment neither wife nor husband could be a witness, under the Code, for or against each other. (Pillow *a.* Bushnell, 5 *Barb.*, 156 ; Erwin *a.* Smaller, 2 *Sandf.*, 340 ; Hasbrouck *a.* Vandervoort, 4 *Ib.*, 596 ; Smith *a.* Smith, 15 *How. Pr.*, 165.) In P. *a.* P. (24 *Ib.*, 197), the head-note is not sustained by the text.

IV. Here was evidence to sustain the judgment, aside from any thing the husband or wife could have said, and as the defendant had precluded himself, by his pleading, from showing any thing wrong on the part of the wife, what he might have had to state, could not possibly have countervailed the substantive evidence given by others. (Whispell *a.* Whispell, 4 *Barb.*, 217.)

V. It is proper to look at this case as though it were an application for a new trial. A new trial will be refused on a case, although the grounds taken at the trial were valid, if it is clear from other considerations, that the result would not be changed. (Horton *a.* Hendershot, 1 *Hill*, 118.) Where sufficient material facts appear to have been proven by other witnesses, the court will not grant a new trial on a case from the fact that an incompetent witness was permitted to testify. (Gardenier *a.* Tubbs, 21 *Wend.*, 169.) This case is an equitable one, and may be looked at as though testimony had been taken under a feigned issue. All that a court of equity requires is, to satisfy its conscience. (Bootle *a.* Bloomdell, 19 *Ves.*, 494 ; Woodworth *a.* Van Buskerk, 1 *Johns. Ch.*, 432 ; Dunham *a.* Winans, 2 *Paige*, 24 ; Hampson *a.* Hampson, 3 *Ves. & B.*, 41 ; Parker *a.* Ray, 2 *Russ.*, 63 ; Muloch *a.* Muloch, 1 *Edw.*, 14.)

VI. The defendant could have moved for a new trial at special term (*Code*, §§ 264, 265); he has, by his appeal, brought

Bihin *a.* Bihin.

before the general term the question of the merits as connected with the judgment.

By the Court.*—Scrugham, J.—The plaintiff is the wife of the defendant, and the action is brought by her to obtain a judgment of separation from bed and board forever on account of alleged cruel and inhuman treatment, and of such conduct towards her on the part of her husband as rendered it unsafe and improper for her to cohabit with him. In addition to the facts alleged in the complaint as constituting this cause of action, it is also alleged that the plaintiff, in the year 1854, purchased a farm and premises in Queens county, and the furniture in the house therein with her own money, and that such farm and furniture are her separate property, and in the prayer for relief she asks that proper provisions may be made in the judgment for her having sole possession of such household furniture, that all proper provision be made for allowance, present alimony and costs, and that she may have such further and other relief as may be proper.

On the trial before the referee a witness, produced by the plaintiff, was asked whether he had seen any thing harsh in the defendant's conduct towards his son Joseph, while his mother, the plaintiff was present. The question was objected to by defendant's counsel, and the referee overruled the objection, but stated that he would reserve his decision on the admissibility of the question, and directed the witness to answer, to which ruling and decision the counsel for the defendant excepted. If the referee had afterwards decided that the testimony which was elicited was inadmissible, it might be necessary to inquire whether he could properly hear it and reserve his decision upon its admissibility until his final decision of the cause. In all of the cases to which we are referred upon this question, testimony was received on the trial and afterwards rejected, and this was held to be error because impressions made by evidence which is improperly received may remain after it is stricken out, and may influence the final decision. If, however, the testimony is admissible and is retained, the declaration of the referee that he will reserve his decision upon its admissibility

* Present, Brown, Scrugham, and Lott, JJ.

until his decision of the case, cannot prejudice the party who objects to it, provided he is given the benefit of an exception to the overruling of his objection.

In this case an exception was taken to the ruling of the referee in receiving the testimony, and the important inquiry is as to its admissibility. It did not relate to any act of violence to the plaintiff's person, and it cannot be received if we are to construe the statute which declares cruel and inhuman treatment by the husband to the wife to be a cause for separation, to limit the evidence of such treatment to proof of the bodily injuries he may inflict upon her. But such a construction cannot be tolerated.

There are mental as well as physical sufferings, and as great cruelty and as much inhumanity may be manifested in producing the first as in causing the latter. They may be and often are produced by acts which cause no physical pain, and even by words alone. Accordingly, in cases like the present, such acts and words have been regarded as cruelties. Spitting on the wife is a gross act of cruelty (Clohen's Case, *Hetley*, 149; D'Argular *a.* D'Argular, 1. *Hagg. Ecc. R.*, 776); so also is a groundless and malicious charge against the wife's chastity (Durant *a.* Durant, 1 *Hagg. Ecc. R.*, 769; Lockwood *a.* Lockwood, 2 *Curteis Ecc. R.*, 281); and it surely cannot be denied that the savage who, in the presence of a mother, tortures or slays her helpless infant, is guilty of as great cruelty to the mother as to the child; so the husband who in the presence of his wife, and notwithstanding her remonstrances, prayers, and entreaties, unmercifully and cruelly beats her young child, outrages her maternal tenderness and sympathies, and commits a violence upon her feelings which is cruel and inhuman. The evidence in regard to the treatment of the boy Joseph, does not establish such a case as I have supposed, nor indeed does it very distinctly show that the punishment to which the defendant subjected him was more severe than that which, as a father, he might lawfully inflict. The question is not, however, upon the effect of the evidence, but as to its admissibility, and we are sustained by authority in holding it to be admissible. (Perry *a.* Perry, 1 *Barb. Ch.*, 516; and 2 *Ib.*, 311.)

The statute provides that the defendant in an action for separation or limited divorce, may prove in his justification the

ill conduct of the plaintiff, but this must be of such as preceded or was contemporaneous with that which seeks to justify, for no subsequent conduct of the defendant could furnish any reason, excuse, or justification for his precedent act, and therefore the question as to the residence of the plaintiff, after she left the defendant, proposed, as it is alleged, for the purpose of showing " an improper course of life," was irrelevant, and the ruling of the referee in sustaining the objection to it was correct.

The complaint, in stating the acts of cruelty upon which the plaintiff intended to rely as constituting her cause of action, gave the dates of their occurrence with sufficient particularity to inform the defendant that some of them happened more than ten years before the commencement of the action, and if he intended to object to proof of them on that account, he should have taken the objection by answer, for such is the positive requirements of the Code (§ 74); equally applicable to those actions which were formerly known as suits in equity, as to actions at law.

The statute which authorizes actions of this character, provides that "upon decreeing a separation in any such suit, the court may make such further decree as the nature and circumstances of the case may require, and may make such order and decree for the suitable support and maintenance of the wife and her children, or any of them, by the husband, or out of his property, as may appear just and proper." (2 *Rev. Stat.,* 147, § 54.)

To enable the court to exercise this power intelligently, the pecuniary circumstances of the parties must be inquired into, and the allegation in the complaint as to the separate property of the plaintiff, and the evidence in regard to it were pertinent to this inquiry. The order of reference sent the action and all the issues therein to the referee, to hear, try, and determine. The allegations of the complaint in regard to the plaintiff's separate property were denied by the answer, and the question thus presented was one of the issues which he was ordered to decide. My brethren, being a majority of the court, are of opinion that having made this decision, he was also authorized to determine the amount the defendant should be adjudged to pay for the suitable support and maintenance of his wife and children, and that it was not irregular to enter a judgment em-

bracing the further. decree of this character authorized by the statute, without first applying to the court.

We have repeatedly held in this district, that the acts which allow parties to be witnesses in their own behalf, are not to be so construed as to permit husband and wife to be witnesses for or against each other.*

---

* In some other districts of the Supreme Court than the first and second, and in the New York Common Pleas, a different rule has been followed.

In the case of AIKEN *a.* BAUMANN, Hon. Murray Hoffman (lately judge of the New York Superior Court), to whom the cause was referred, fully discussed this point, and *Held,* that according to the weight of authority in the Supreme Court of this State, husband and wife were competent as witnesses for or against each other ; and that where one of them is admitted to testify, and says any thing which bears upon the case as sustaining the other, there can be no restriction on cross-examination which would not apply to any other witness.

He also *Held,* that in an action by a judgment-creditor to set aside as fraudulent a conveyance of the debtor's property, the debtor who is named in the summons and complaint as a defendant, and against whom relief, at least as to costs, is sought, is a party, within the provisions of section 399 of the Code of Procedure,—relating to the examination of parties.

The action was against Baumann, his wife, and others, It was brought by a judgment-creditor after execution returned, to set aside conveyances by which certain real estate was vested in the defendant, Mrs. Baumann, as made in fraud of creditors.

The defence of the wife was, in substance, that the real estate in question was not worth over $6,500, and the other property about $1,000 ; that she was worth, at the time of her marriage, about $7,000 in her own possession ; that in the month of April, 1859, Baumann held the property subject to a mortgage for $1,800, to the Williamsburgh Insurance Company; and to another for $5,000, to T. Hoffstetter, and was indebted to Joseph Wangler in the sum of $1,000, which she had guarantied ; that in April, 1859, she purchased the Hoffstetter mortgage, and paid the amount out of her separate property, and took an assignment ; that at the same time, her husband conveyed the property to Wangler, and in payment of the $1,000 so guarantied, subject to the mortgages, being $6,800, and about $200 interest due, and Wangler sold and conveyed this property to her ; that she paid him the $1,000 ; the $1,800 now remained a lien, and she now held the $5,000 mortgage. She denied all fraud, and averred possession by her.

*William W. Peck,* for the plaintiffs.

*T. C. T. Bulkley,* for the defendants.

HOFFMAN, Referee.—I agree with the counsel of the defendants, that the defendant Baumann is a party in the sense of the 399th section. He is named in the summons and complaint, and relief is sought at least for costs against him. (See Judge Ingraham's opinion in Macondray *a.* Wardle, 26 *Barb.*, 612.)

He was probably a necessary party. I agree with the counsel of the plaintiff, that if Baumann is a witness in the cause, and says a word which bears upon the case as sustaining the wife's defence, there can be no restriction on a cross-exam-

But by a rule of the court, especially provided for actions for separation or limited divorce, the plaintiff is allowed, in a reference, to take proof of the facts charged in the complaint, to be examined on oath as to any cruel or inhuman treatment

ination which would not apply to any other witness. It would violate all just rules of evidence, if his testimony in her favor should be allowed, and any thing which could tend to impair or overthrow it should be excluded.

Hasbrouck *a.* Vandervoort (4 *Sandf.*, 597 ; and 9 *N. Y.*, 153) settled that where the action was by the trustee of a wife against a stranger, the husband could not be a witness for or against the trustee.

The points ruled were, that, at common law, the husband could not be a witness for the wife, nor the wife for the husband.

This was founded upon public policy, not the interest of the witness. And the Code had not changed this rule.

The rule then in force (1851) was, that no person offered as a witness should be excluded by reason of his interest in the event of the action, but the provision was not to apply to a party to the action. (*Code of* 1851, §§ 398, 399.)

The law was stated to be, that husbands and wives are not competent witnesses for or against each other in any suit in which either is a party, or in the event of which either has a distinct and certain interest.

The Code of 1857 repealed the exception in the previous Code as to parties or persons for whose benefit a suit was prosecuted or defended. It provided that a party to an action or special proceeding may be examined as a witness in his own behalf, the same as any other witness. Then followed an exception not necessary to be noticed. (1 *Laws of* 1857, 744, ch. 353.)

The amendments of 1858 and 1859 did not vary this provision.

On the 16th of April, 1860, the amendment of the 399th section went into effect.

It provided that a party to an action, &c., might be examined as a witness on his own behalf, or on behalf of any other party, in the same manner and subject to the same rules of examination, as any other witnesses ; except, &c., "and except also that neither husband nor wife should be required to disclose any communication made by one to the other." (*Laws of* 1860, 787, ch. 459, § 12.)

And by the amendment of 1862, the Code of 1857 was, so far as respects the present question, restored. The words as to the husband or wife not being required to disclose communications, made by one to the other, being omitted.

The following are the leading authorities decided at different times since the Code of 1857 :

In Smith *a.* Smith (15 *How. Pr.*, 165, Special Term, Aug., 1857), the action was for a divorce, and, upon a reference, the wife was the only witness to prove the facts.

The Code was then the same substantially as it is now. It was held that the evidence was improperly allowed. The Code had not removed the common-law incompetency.

Macondray *a.* Wardle (26 *Barb.*, 612 ; S. C., 7 *Abbotts' Pr.*, 3) was a case very similar to the present, and the wife was held to be an incompetent witness. A person incompetent to testify, could not be made competent by being made a party.

alleged in the complaint, which took place when no witnesses were present who are competent to testify to the facts on such reference.

The plaintiff in these cases is generally the wife, and as her

Andrews *a.* Nelson (7 *Abbotts' Pr.*, 3, *note*) was decided on the authority of this case, where a wife was sought to be examined upon supplementary proceedings against the husband.

Shoemaker *a.* McKee (19 *How. Pr.*, 86, General Term, 6th District, May, 1860) was an action to set aside a conveyance of a lot of land as fraudulent against creditors. It was against husband and wife, alleging that the money for the conveyance was paid by the husband.

The wife was held to be a competent witness. The decision is precise and directly in point, without any qualification.

The amendment of April, 1860, did not govern the question, although it was in force when the case was decided at General Term.

Babbott *a.* Thomas (31 *Barb.*, 277), a case cited, was determined upon points making it of little pertinence to the present question.

The case of Marsh *a.* Potter (30 *Barb.*, 506) was decided in January, 1860, at General Term of the Third District. It was of course under the Code of 1859, the same as that of 1857 in this respect.

The action was against husband and wife, for slander by the wife; and the rule was broadly stated, that, under the Code, husband and wife were competent witnesses on their own behalf, when co-plaintiffs or co-defendants; and were also competent witnesses for each other. One justice dissented.

The court admitted that in an action by a stranger against husband and wife alone, neither could be called against the other. It held also, that confidential communications between them were still protected from disclosure, as at common law. See also, to this point, Chamberlain *a.* People (23 *N. Y.*, 85, and cases cited).

Schaffner *a.* Reuter and others (37 *Barb.*, 44, May, 1862, 3d District) was an action very similar to the present. The consideration of a conveyance for a wife was proven by herself to have been money of her own, received by the husband in 1846, with a promise to repay it. Her evidence was admitted on the broad ground of the effect of the Code.

In Barton *a.* Gledhill (May, 1861, 12 *Abbotts' Pr.*, 246) the action was by Barton and wife against Gledhill and wife, for slander uttered by the wife of Gledhill.

The court below rejected the testimony of the plaintiffs. On appeal, this was held to be error, and the judgment was reversed.

The court placed its decision on the Code, irrespective of the act of April, 1860, as to the exception of confidential communications, although that exception is afterwards noticed as being decisive, if there was doubt without it.

In Johnson *a.* Johnson (Superior Court, General Term, 1861), a case of divorce, the court held that a wife or husband was not a competent witness to establish any material fact against the other in a suit between them.

The exception in the Code of 1860, relating to confidential communications, implies that the Legislature supposed the language before used authorized the admission of husband or wife as a witness. If the competency sprang from, or was contained in, the exception alone, the argument, from its subsequent omission, might be found irresistible.

But it was a qualification of what must be assumed to be previously allowed,

examination against her husband is not authorized except by the rule, her testimony can only be received when it relates to acts of cruelty of which there was no witness competent to testify on the reference. In this case, the plaintiff was allowed to give evidence of acts of violence alleged to have been committed upon her by her husband at Limburg, Belgium, in the presence of Mr. De Cass. Unless Mr. De Cass was competent to testify on the reference, this was proper, and the objection made to the testimony was not sufficiently explicit, as it did not allege his competency. Moreover, the principal facts which she stated occurred on that occasion, are proven by the evidence of Wm. H. Vyse.

The judgment should be affirmed with costs.

---

and then the omission by no means negatives the competency. Perhaps it would be more logical to say that even such communications became admissible; or, the omission may be attributed to the fact that the general law would exclude evidence of that nature. The general rule, that confidential communications are not to be inquired into, I understand to mean, that a third party shall not be allowed to call for such disclosures.

Even after the dissolution of the marriage, as by death, what took place during it of that nature may not be inquired into.

But it cannot be that if a husband or wife is called, whose evidence benefits the other, a cross-examination can be restricted by any other rules than those which apply to other witnesses.

I do not think that the clause, "in the same manner and subject to the same rules of examination as other witnesses," affects, much less decides, this question. The clause was in the Code of 1860, which, as I have endeavored to show, did, by its very exception, import the general competency of husband or wife.

It strikes me that the weight of authority in the Supreme Court is decisive to establish the admissibility of the husband in this case.