### FOWLER v. FOWLER.

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

1. LIMITED DIVORCE—EVIDENCE.

In an action by a wife for a limited divorce, the evidence showed that defendant had falsely charged plaintiff with adultery with various persons; that he had also stated that on one occasion he discovered her in the act, and that he had a written confession of the fact from her *particeps criminis;* that he had made persistent efforts to entrap her into a confession of guilt, and that the effect of this course of treatment twice brought plaintiff to a condition in which she attempted to take her life, and kept her in a condition of nervous prostration. *Held,* that this was sufficient to justify a limited divorce under Code Civil Proc. § 1762, subd. 2, permitting such a divorce for "such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the former to cohabit with the latter."

2. SAME.

Evidence of plaintiff that on the second night of their marriage defendant said to her that he did not love her, and that he had made a mistake in marrying her, was properly admitted, not as a declaration of fact, but as a fact in itself, contributing to constitute plaintiff's cause of action.

3. SAME.

Plaintiff was also properly permitted to testify that defendant made a statement to her, in the form of a confession, that he had had improper relations with a woman in his office, and that he afterwards admitted that the confession was false, and made in the hope of inducing a similar confession from her in return.

4. SAME.

A letter written by plaintiff, and handed by her to defendant, in which she reviewed the history of their marriage life and depicted his cruelty and injustice, was competent evidence as a declaration made to defendant of facts which he had an opportunity to deny or excuse.

Appeal from special term.

Action for a limited divorce, brought by Carrie C. Fowler against William P. Fowler. From an interlocutory judgment in favor of plaintiff, the defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*F. E. Drake,* for appellant. *E. F. Wellington,* for respondent.

DWIGHT, P. J. The findings of fact in this case cannot be disturbed. They are completely supported by the testimony of the plaintiff, which is corroborated, in important particulars, by the testimony of other witnesses, by collateral circumstances, and by admissions of the defendant. Under all the disclosures of the evidence, it was permitted to the trial court to give full credit to the plaintiff, and to reject the defendant's testimony so far as it conflicted with hers. This being done, a very strong case is made, within the language of the statute, "of such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the former to cohabit with the latter." Code Civil Proc. § 1762, subd. 2. The course of conduct of the defendant towards the plaintiff as thus portrayed might well be denominated cruel and inhuman. It was characterized by complete disloyalty of sentiment, denial of confidence and affection, base and unfounded suspicions, false and malicious accusation. He falsely charged her, to her face and to her friends, with adultery with her physician, with the physician of her child, and with the husband of her sister. He falsely stated that on one occasion he discovered her in the act, and that he had a written confession

of the fact from her *particeps criminis.* He made persistent efforts to entrap her into a confession of guilt, and was watchful and solicitous, not in the defense of his wife's purity, and his own honor, but to obtain evidence that both had suffered defeat. In the mean time, during the 10 years from their marriage to their separation, the plaintiff was 10 times with child by the defendant, having been five times confined with living children, and five times by miscarriages. The trial court finds that the effect of this course of treatment was "to keep the plaintiff in ill health, to throw her into a condition of nervous prostration, and to make it unsafe and improper for her to cohabit with the defendant;" and the evidence shows that she was twice brought to a condition in which she attempted to destroy her own life. Here there was the physical injury and the physical danger necessary to constitute cruel and inhuman treatment, even though the physical violence, commonly an element of such treatment, was wanting. The trial court has not found, in terms, that the plaintiff was subject to cruel and inhuman treatment, but has found the existence of the cause for separation prescribed by the second subdivision of the statute, quoted above, and that finding equally supports the conclus.on of law upon which the judgment was based. It may well be questioned whether, under the later authorities, even where the sole cause of separation alleged is cruel and inhuman treatment, it is necessary to prove physical violence. *Kennedy* v. *Kennedy,* 73 N. Y. 369; *Bihin* v. *Bihin,* 17 Abb. Pr. 19–26; *De Meli* v. *De Meli,* 67 How. Pr. 20–32; *Lutz* v. *Lutz,* 9 N. Y. Supp. 858. Several of these cases recognize the principle that a course of conduct which produces great mental distress may be cruel and inhuman, even though physical violence is not inflicted; but in this case there is the allegation and the finding, abundantly supported by the evidence, of a course of conduct which rendered it improper and unsafe for the plaintiff to cohabit with the defendant. The several subdivisions of section 1762, *supra,* are alternative in their provisions, and the several causes prescribed by them, for which a separation may be decreed, are independent of each other.

Several exceptions to rulings of the court are strongly insisted upon as pointing to error on the trial. Two of them relate to communications made by the husband to the wife, testified to by the latter, which, it is urged, were privileged communications. One was the declaration of the defendant to his young bride, on the second night after their marriage, that he did not love her, and that he had made a mistake in marrying her. If to make such a declaration at such a time was an act of cruelty, if it was the early beginning of a course of treatment persisted in throughout their married life, which was destined to destroy her happiness, to rob her of her peace of mind, to undermine her physical and mental health, and to drive her to attempts upon her own life, and thus to render it improper and unsafe for her to cohabit with him, then it was not a privileged communication. It was to be received in evidence, not as a declaration of the fact declared, but as a fact in itself contributing to constitute the plaintiff's cause of action. Such acts cannot be concealed under the cloak of privilege.

Another objection by the defendant, on the same ground, seems to be equally untenable. The plaintiff was permitted to prove, by her own testimony, that the defendant at one time made a statement to her, in the form of a confession, that he had had improper relations with a woman in his office. There was no charge of adultery against the defendant in the complaint, and the declaration was plainly inadmissible to prove the fact confessed. But further testimony of the plaintiff shows the true character of the so-called "confession," and demonstrates the admissibility of the evidence. The defendant afterwards admitted to the plaintiff that the pretended confession was false, made, as he said, out of whole cloth, and with the hope of inducing a similar confession from her in return. In other words, this "confidential communication" from the husband to the wife was a deliberate device to en-

trap the wife into a confession of guilt on her own part. There is no shield of privilege for such an act as this.

The remaining exception to be noticed here relates to the admission in evidence of a letter written by the plaintiff to the defendant shortly before she left his house. She herself handed to him, and he read it. It was a long letter, in which she reviewed the history of their unhappy married life. It reminded him of her struggles and sacrifices in the vain effort to gain his confidence and affection, and depicted the cruelty and injustice which she had suffered at his hands, and it disclosed a condition of mind bordering on despair. It was competent evidence, because it was a declaration, made to the defendant himself, of facts which he had the opportunity to deny or excuse. The response which the defendant made to this communication is in evidence, and it was for the trial court to attach to both their proper significance as bearing upon the issues in the action. We are of the opinion that the evidence in the case supports the finding of fact which we have considered, and that such finding in turn supports the conclusion of law upon which the judgment is based; and we have discovered no error on the trial which vitiates either. The judgment should be affirmed. Interlocutory judgment appealed from affirmed, with costs. All concur.