ELLA E. B. WEHRKAMP *v.* JAMES S. WILLETT, Administrator of JAMES S. WILLETT, deceased, Sheriff, etc.

Where the husband and wife are parties to an action, the statute in terms makes them competent witnesses in their own behalf, or in behalf of any other party.

As such witnesses they are subject to the same rules of examination, except they are protected from being required to make disclosures of communications between themselves.

The only proper inquiry, on the direct examination of a witness, as to the character of another, is as to the general moral character of the latter, and his public reputation as a truthful or untruthful person. It is not permissible for the assailing party to show specific acts of immorality or misconduct, with the view of impeaching or discrediting a person as a witness.

APPEAL from a judgment of New York Common Pleas. The action was brought by the plaintiff, a married woman, to recover the possession of certain personal property in carpets and paintings, alleged to belong to her, which was taken by the defendant's intestate, as sheriff of the city and county of New York, under an execution issued upon a judgment recovered in favor of one William L. Martine against her husband.

The case was tried in the New York Common Pleas, before his honor, Judge BRADY, in April, 1861, and the plaintiff had a verdict, the jury assessing the value of the property at $690. The sole question in issue was whether the plaintiff was the owner of the property, or whether the same belonged to her husband. The proof tended to establish ownership in the plaintiff; and there was no fact shown leading to a contrary conclusion except that, at the time the property was taken and sold, the plaintiff and her husband were living together as man and wife. The defense mainly consisted in an attempt to impeach the character and credibility of the plaintiff, who was sworn as a witness, and in showing that before her marriage, in September, 1854, and prior to her coming to this country, in 1853, from Denmark, of which she was a native, she was a woman of poor parentage and of immoral habits.

At the close of the plaintiff's testimony, the defendant moved for a nonsuit, which was refused and an exception taken. But this exception is not now urged. There was no exception to the charge of the judge, except in a single unimportant particular; and any exceptions open to review here related to the ruling, on the trial, as to the admission or exclusion of evidence. The exceptions were numerous, but most of them palpably frivolous. Those insisted upon as having any merit are to be noticed in the opinions.

*A. R. Dyett*, for the appellant.

*C. Bainbridge Smith*, for the respondent.

Wright, J. The plaintiff was sworn as a witness in her own behalf; the defendant objecting to her examination, as the case states, on the ground that the action being under the sheriff's claim against the husband, it was substantially against him, and she could not be examined because her husband was so far interested in the case. The point of the objection is not clear, but if it has any meaning it is this, that the sheriff having taken and sold property under an execution against the plaintiff's husband, an action to test the title to such property is one substantially against him, and in which he is interested, and the law forbids husband and wife to testify either for or against each other. Regarding this as the substance of the objection there is no force in it.

The rule of the common law did not prohibit husband and wife from testifying in a civil action, unless one or the other, or both were parties, or directly interested in the subject of the action. Here the husband was not a party, nor had he any such interest as would have disqualified the wife by strict common law rules. The action was in no proper sense against him. He made no claim to the property taken and sold by the defendant, and had no interest in the litigation, unless, indeed, to have his debts paid from property to which he laid no claim. There was no conflict of interest between husband and wife; the latter claiming the property as her

own, and the former not disputing or gainsaying her rights to it. But had the husband been a party to the action, having any interest in the result, the plaintiff's competency would have been affected. The Code provides that a party to an action may be examined as a witness in his own behalf, or in behalf of any other party in the same manner, and subject to the same rules of examination as any other witness, except that neither husband nor wife shall be required to disclose any communication made by one to the other. (Code § 399, as amended in 1860; Laws of 1860, Chap. 459.) The letter of the statutes certainly extends to married persons when they are parties, not having conflicting interest, and the exception is a plain indication of the legislative intention to change or modify the common law rule as to the admissibility of husband and wife as witnesses. The reason of the latter rule for not admitting husband and wife as witnesses for each other was because of an identity of interest; nor against each other, because contrary to the legal policy of marriage. Husband and wife, says Blackstone, "are not allowed to be evidence for or against each other, partly because it is impossible that their testimony should be indifferent, but principally because of the union of persons, and, therefore, if they were admitted to be witnesses, for each other, they would contradict our maxim of law, no one shall be a witness in his own cause; and if against each other, they would contradict another maxim, no one is obliged to convict himself." (1 Bl. Com., 443.) "If they" (husband and wife), says Baron Gilbert, in his work on evidence (page 552), "swear for each other, they are not believed, because their interests are absolutely the same, and, therefore, they can give no more credit when they attest for each other, than when a man attests for himself, and it would be very hard if a wife should be allowed as evidence against her husband, when she cannot attest for him. Such a law would occasion implacable quarrels and divisions, and destroy the very legal policy of marriage." But of late years, in this State, material and radical changes have been made in the law of husband and wife, and in the law of evidence, and the competency and admissibility of

witnesses, undermining in a great degree the uses of, and practically abrogating the common law rule.

The wife has been admitted to separate rights of property, and to separate rights of action, even as against the husband himself. Interest in the event of the action is no longer a ground for excluding a witness, and the parties themselves may be witnesses in their own behalf, or witnesses in their own cause. Parties, with certain exceptions, are placed upon the same footing and subject to the same rules of examination as any other witnesses. There is no longer any reason for excluding husband and wife as witnesses for or against each other on the ground of interest, for as parties to an action they may be witnesses for themselves; and it was this ground of union of interest and privilege between husband and wife that mainly gave rise to the common law rule, excluding them from testifying for or against each other. Be this, however, as it may, the tendency and effect of legislation has been to abrogate the common law distinctions growing out of the marital relation in respect to the competency of witnesses; whether husband or wife are parties to, or interested in an action, they may be examined in the same manner and subject to the same rules of examination as any other witness, except that they shall not be required to disclose any confidential communication made to each other during marriage. If husband and wife are parties to an action, the statute in terms makes them competent witnesses in their own behalf, or in behalf of any other party, and subjects them to the same rules of examination as other witnesses, except protecting either from a disclosure of communications made by one to the other. The exception is strongly indicative of the legislative intention to render husband and wife, when parties, competent to testify as to all matters, other than communication made by the husband to the wife, or the wife to the husband. In the present case the action was brought by the wife for the conversion of her separate property. As the plaintiff, she could testify on her own behalf, and had the controversy been between her husband and a third person in respect to the property, I

entertain no doubt that she would have been a competent witness to show title in herself, and out of her husband, unless such title came through the latter.

The property consisted of Brussels carpeting and oil paintings, and the testimony of the plaintiff, if credited, clearly established her title to it. Indeed, all the evidence as to ownership was on the part of the plaintiff, and her own statement was materially contradicted by disinterested witnesses. The defendant's proof was mainly directed to an impeachment of the plaintiff and to lessening the value of the paintings. It appeared from her testimony in connection with the other witnesses that she was a native of Denmark, and lived with her parents until she was fourteen years of age. She then went to live with her aunt in Sweden, who was wealthy, and she was with the latter some six or seven years. Her aunt left her sick at Hamburg, in Germany, and went to Paris, and after her recovery she came to this country. She brought with her $1,000 in gold and nearly $2,000 worth of jewelry, given to her by her aunt, and also three paintings, "The King and Queen of Denmark," "The Sacrifice" and "The Aurora." She was supported in the fact of gold, costly jewelry and paintings when, in 1853, she embarked for this country, by a lady who knew her at Hamburg. On her arrival at New York she put up at the Hotel Constane, and the bookkeeper of the establishment testified to having seen in her possession some $500 or $600 in gold, and also much valuable jewelry. She was married in September, 1854, to W. Wehrkamp, who was a bookkeeper and a person without means, and neither at the time of marriage or since had been engaged in any business on his own account. Some three years after the marriage, the plaintiff and her husband went to Europe, but were absent but a short time. Seven of the paintings taken by the sheriff were purchased by the plaintiff from an English artist after her marriage, with her own means, and five small pieces she painted herself. She kept an account in her own name in the Bleecker street savings bank from March, 1855, to March, 1857, and while the account was running the teller testified that she spoke to

him of having paintings and jewelry which she desired to sell. In 1856 and 1857 she purchased the carpets in question from Doughty & Brother, who only knew her in the transaction. A short credit was given, and she paid for them with her own money. Of this carpeting there were over five hundred yards, worth at least one dollar per yard. It is true that the plaintiff and Wehrkamp were living together as husband and wife when the property was seized, but beyond this there was not a fact or circumstance in the case tending to show ownership in him or to disprove the plaintiff's ownership. Upon this proof it would have been error to have granted the motion to dismiss the complaint on the ground argued, viz., that there was not sufficient evidence that the property in question was the separate property of Mrs. Wehrkamp to entitle her to recover.

Many of the defendant's exceptions occur in the cross-examination of the plaintiff. Several of them were palpably frivolous, requiring no notice, and were not insisted upon in the argument, nor are any on which a point was made at bar tenable. The fact to which our attention was directed arose in this way : The defendant's counsel had got the witness to say that she recollected that a Mr. Carpenter had obtained a judgment against her husband. The question was then put to her, " Do you recollect asking Mr. Carpenter to loan that money—the money for which the judgment was obtained and the property taken ? " This was objected to and excluded. Two or three other questions of a similar character followed, varying only in phraseology, which were also excluded. She was then inquired of, " Did you at any time say to Mr. Carpenter or in his presence that the paintings and carpets belonged to you and your husband and they will pay the debt ? " This was allowed and answered. There was no error here. The questions excluded assumed facts not proved. There was nothing in the case to show that the property was taken to satisfy a judgment obtained by Carpenter against Wehrkamp for borrowed money. Free from this objection, and when the inquiry was put in form to throw light upon the issue whether she was the

owner of the property, it was allowed and answered; The defendant's counsel, however, was not satisfied, and persisted in the question, 1. " Did you tell Mr. Carpenter in November, 1857, that your husband was sick and wanted some money ? " and, 2. " Do you recollect the fact of your husband borrowing money of Mr. Carpenter in November, 1857 ? " These were properly excluded: The fact of her husband borrowing money from Carpenter was wholly immaterial; At a subsequent stage of the trial the defendant's counsel returned to this course of irrelevant examination, but with no better success.

The plaintiff testified that she at one time loaned some of her money to a Mr. Jacobs, a friend of her husband who was then in New York; she did not know his christian name. The defendant's counsel then inquired, " Will you ask your husband, who is here in court, what Jacobs' first name was, and where he lived, so that I may ascertain who he is and where he lives ? The court, on objection excluded the question arresting Collogeny with the witness, and the defendant excepted. This was plainly right. It would have been the duty of the court in the orderly conduct of the trial, irrespective of any formal objection, to have arrested such a course of examination. It was manifestly trifling with the dignity and wasting the time of the court by impertinent and irrelevant inquiries; unprofessional conduct of counsel.

It seems that the action had been once tried and the plaintiff had obtained a verdict. A new trial was granted, as it was alleged by the defendant's counsel, on the ground of newly discovered evidence. The plaintiff stated on her cross-examination on the present trial that she did not know the ground on which the new trial was granted and that she did not recollect of testifying on the first trial that she obtained credit from Doughty for one bill of carpeting because she had money in the savings bank, but if she so testified she misunderstood the question. At the close of the defendant's case his counsel offered to read the affidavits on which the motion for the new trial was made and in connection therewith to prove that they were served on the plaintiff's attorney, and that no affi-

davits were read on her part to contradict therein, with the view, as was stated, of showing, first, that the plaintiff swore falsely in stating that she was ignorant of the ground on which a new trial was granted, and second, that the new trial was moved for on the express ground that she had on the first trial sworn that she got credit from Doughty on one bill of carpeting because she had money in the savings bank. When the newly discovered evidence showed that she had no money there, and to argue to the jury from thence, that her statement, that she knows nothing of all this, and that she did not testify on the former trial as alleged, or if she did, she misunderstood the question, was a mere pretense. Of course the affidavits used on the part of the defendant in a collateral proceeding, were excluded, and properly so. If it were at all material or important to contradict the statement of the witness that she did not know on what ground the new trial was granted, it could not be done in this way, nor was the testimony permissible to enable the counsel, as was averred upon it, to hinge an address to the jury against the witness' credibility. The probabilities are, that being a foreigner, having an imperfect knowledge of our language or of the form and course of legal proceedings, she testified truly that she was ignorant of the ground on which the motion for a new trial was granted; but whether so or not, or if at all material, her testimony in this respect could not be falsified by showing that the affidavits of the defendant on the motion, alleged a certain ground, and no affidavits were read on the part of the plaintiff in contradiction of them; nor if it had been important to show that on the first trial she testified that she obtained credit for the bill of carpeting bought in May, 1857, because she had money in the savings bank, when in fact she had not, could it be shown by the affidavits of the defendants prepared for, and used in a collateral motion. The avowed purpose, however, of the offered testimony was not to show that the witness had testified untruly as to her knowledge of the ground on which a new trial was obtained, or in respect to any material fact on the first trial, but to enable counsel to argue to the jury, that

33

her statement that she knew not why the new trial was granted, or that she did not recollect of testifying on the former occasion, that she was credited for a bill of carpeting in May, 1857, because she had money in the savings bank, or if she so testified she misunderstood the inquiry, was a mere pretense. This was certainly a novel attempt to get before the jury impertinent and irrelevant testimony on which to base an assault upon the witness' credibility. The defendant offered no proof on the question of ownership of the property, but the main effort seems to have been to impeach the character and credit of the plaintiff. In this his counsel was indulged by the court in a wide latitude of examination, but apparently with indifferent success. None of her statements were shown to be untrue. Her reputation for truth, or her moral standing for eight years that she had resided in the city of New York, was not questioned. Two witnesses were produced who testified to having known her and her parents in Denmark; one of whom stated that prior to 1850 she was a prostitute in Copenhagen, and the other that he had danced with her many years ago in her native place at public balls and masquerades; that her general character or reputation then was bad, and that from what he had heard and knew of it in Copenhagen, he would not believe her under oath. The first of these witnesses was not interrogated as to her general moral character in her native place, or in Copenhagen, but was allowed, without objections, to testify generally to the fact that at some time before she came to this country she was a prostitute, and lived in a house of prostitution; although it appeared from his cross-examination that he testified from no personal knowledge, never having met or spoken to her but once in Copenhagen, and then by accident in the street; with respect to the other witness, after stating that he had danced with her at public balls and masquerades, the defendant's counsel propounded the question to him, "What was the character of the house in which the balls and masquerades were given?" This was objected to and excluded, and an exception taken. This was not error. The only proper inquiry on the direct examination of the witness was as to

her general, moral character and her public reputation as a truthful or untruthful women. It was not permissible for the defendant to show specified acts of immorality or misconduct with the view of impeaching or discrediting her as a witness. The character of the houses at which she attended balls and masquerades, was utterly immaterial except in its bearing on her moral reputation and habits.

These are all the exceptions supposed on the argument to be entitled to any consideration. Indeed, none of them were strenuously urged, except that allowing the plaintiff to be examined as a witness on her own behalf.

The judgment of the Common Pleas should be affirmed.

All the judges concurring except MULLIN, J., who was for reversal on the grounds stated in the following opinion.

MULLIN, J. Had the verdict of the jury been for a much less sum than for which it was rendered, I should feel much better satisfied that injustice had not been done to the defendant and those he represented. But the court below has not seen fit to disturb the verdict, and we cannot, if we would, interfere with it, notwithstanding it might be satisfied that it was for much more than the plaintiff was entitled to recover. If the ruling on the trial was correct the judgment must stand, whatever errors may have been committed by the jury.

The first question presented for our consideration is, whether the plaintiff was a competent witness in her own behalf. The ground of the objection to her is, that the defendant asserts title to the property in controversy through a judgment recovered against the plaintiff's husband, and, therefore, the husband is substantially a party, and the wife cannot be examined as a witness against her husband.

At common law, neither the husband or the wife could be examined as a witness for or against each other, and this rule of exclusion was adopted because it was considered to be against public policy to compel persons occupying the relation of husband and wife to disclose the acts and sayings of

each, or to subject either to the prejudice or passion which would naturally arise against the one who should give evidence injurious to the interests or feelings of the other.

To this rule of exclusion there was but one exception, that neither might be a witness against the other in regard to personal injury done or threatened, and that the wife was a competent witness against the husband on the trial of an indictment for a forcible marriage, or for a conspiracy and fraudulent marriage. (2 Cow. & Hill's notes, 1554.) In all civil matters they were wholly incompetent to testify for or against each other. (Id., 1554.)

The Code has changed the common law rules of evidence in many very important particulars, among others by making the wife a competent witness against her husband in actions in respect to her separate property. By the act for the more effectual protection of married women passed, April 7, 1848, a married women was permitted to take by gift, devise, or bequest from any person other than her husband, and hold to her sole and separate use, convey and devise, real and personal property in the same manner as if she were unmarried.

It was provided by section 114 of the Code of Procedure, as it stood when this action was commenced, that where a married woman is a party her husband must be joined with her, except that when the action concerns her separate property, she might sue alone.

Thus, by section 399 of the Code, it was provided that a party to an action or special proceeding may be examined in his own behalf, or in behalf of any other in the same manner, and subject to the same rules of examination, as any other witnesses. The statute makes *every party* a competent witness—there is no exception, and the courts have no power to create exceptions to the operations of statutes unless the exception is necessary to prevent injustice, so obvious with the intention of the legislature, that it should be excluded.

The case of a married woman owning separate estate is not a case within any principle of exclusion. If it was wise and just that married women should have separate estates.

which they could hold, manage and dispose of as if they were unmarried, and that they might sue and be sued in relation to such estates, it is eqnally just and right that they should be able to be witnesses in their own behalf if all other persons were to be, or the right to hold property separately would be a curse rather than a boon.

The decisions of the court have not been uniform on this question, yet I think the weight of authority in the Supreme Court is in favor of holding the wife a competent witness. (*Shoemaker* v. *M'Kee* 19 How. Pr., 86; *Marsh* v. *Potter*, 30 Barb., 506; *Schaffner* v. *Renten*, 37 Barb., 44.)

In this court there is no reported decision on the question, that I have been able to find. In March, 1863, the case of *Marsh* v. *Potter*, cited *supra*, was approved by this court, and thus settling the question as to the competency of the wife.

The court below were right, therefore, in admitting the plaintiff to testify in her own behalf.

The plaintiff was asked by her counsel and by the court whether she was acquainted with the value of the pictures, and she replied, a little. She was then asked what was the value of "The Sacrifice," one of the number. This question was objected to by the defendant's counsel. The objection was overruled, and the defendant's counsel excepted. The counsel did not specify in his objection the ground on which he desired to have it excluded, and the only ground he can now rest upon is that a person a little acquainted with pictures, having painted some herself and bought others, was not competent to give an opinion as to value. It seems to me that she had shown herself competent to express an opinion upon the value, the weight that opinion was entitled to was for the jury. If the counsel had desired to have her capacity to form an opinion as to value further tested, he should have objected to allowing her to express an opinion until her competency was carefully shown. But he has contented himself with resting on the objection that on her evidence she was not shown capable of offering an opinion as to value, and as I have no doubt she was competent, his objection was properly overruled.

Several questions were put to this witness on cross-examination, by the defendant's counsel, as to whether, at the time her husband borrowed of Carpenter, the money for which the judgment was recovered on as an examination on which the property in controversy in the suit here was taken by the defendant and sold. She did not say to Carpenter, pointing to the carpets and paintings, " these all belong to us, and will pay for it, or will pay you." All of them were objected to by plaintiff's counsel, and the objections were sustained by the court and the defendant's counsel excepted.

The plaintiff's claim to a recovery rested on her exclusive ownership of the property seized and sold by the sheriff. She had sworn, on her direct examination, that she was the owner, as her own separate property, of the money with which the carpets and some of the paintings were paid for, and that the other paintings not purchased by her were given to her by her aunt.

It was competent for the defendant to contradict her as to the ownership of the property, either by her own evidence, or the evidence of others. If she had stated, before suit brought, when she had no intent to deny her exclusive ownership of the property, and when she was called on to speak the truth as to the ownership if she spoke at all, that the property was not her separate property but that of her husband, or of her husband and herself jointly, it would have had a tendency to impair the confidence of the jury in her whole evidence, and to establish affirmatively as against her, an ownership of the husband in the property. This was precisely what an affirmative answer to the questions put to her would have proved, or have had a tendency to prove, and I confess I am *unable to conjecture upon what* ground the evidence was excluded. The court, however, did permit the counsel to inquire of the witness whether she at any time said to Carpenter, or in his presence, that the paintings and carpets belonged to her and her husband, and they would pay the debt.

The question excluded limited the conversation to the time when Carpenter was applied to for the loan. The question

admitted was not limited to any time; it, therefore cures the error committed in the repetition of the former questions, and gave the defendant the benefit of an answer to substantially the same question.

The witness Lowenburg testified on his direct examina-that he would value the picture called "The Sacrifice" at $500. On his cross-examination he was asked how much he would give for that picture. This question was objected to .and excluded, and the defendant's counsel excepted. He was also asked whether he thought the picture could be sold for the price he had named. This question was also objected to and excluded.

It must be considered that what the witness would give for a picture, was no evidence of value; but the object of the inquiry was not to obtain an answer which would control the jury in the estimate of value, but to ascertain whether the estimate was not grossly unreasonable. It was a legitimate inquiry on cross-examination. So also as to the other question; the market value might not be a proper estimate of value, but it was a criterion by which the jury might test the accuracy of the opinion as to the value.

I think the question was improperly overruled.

I am of opinion, however, that for the rejection of the evidence above mentioned, the judgment of the court below should be reversed and a new trial ordered, costs to abide the event.

Judgment affirmed.