LOUISE C. SOUTHWICK, Appellant, *v.* GEORGE W. SOUTHWICK,
Respondent.

Under the provisions of the act of 1867 (chap. 887, Laws of 1867), in an
action between husband and wife either is a witness in his or her behalf
against the other, save in the cases excepted in said act.

This act applied to all trials thereafter had in actions pending when it took
effect, and under it the husband or wife can testify to conversations and
communications (not confidential) had with the other prior to the taking
effect of the act.

The act as thus interpreted is not repugnant to the provision of the Con-
stitution of the United States (sub. 1, § 10, art. 1) prohibiting the passage
of an *ex post facto* law.

An order making an extra allowance when it does not exceed the limits
prescribed by the Code is not reviewable in this court.

(Argued May 24, 1872; decided May 28, 1872.)

APPEAL from judgment of the General Term of the
Superior Court of the city of New York, affirming a judg-
ment in favor of defendant entered upon the report of
a referee.

The action was brought by plaintiff against her husband
to recover an alleged balance of moneys in his hands belong-
ing to her separate estate and received by him as her agent.
The defence was payment.

Upon the trial defendant offered himself as a witness in
his own behalf, and plaintiff's counsel objected that he was
incompetent. Objection overruled, and he was sworn and
examined. After proving the payment of certain bills for
goods purchased by plaintiff, and of various sums of money
to her, he was allowed to testify, under objection, to conver-
sations with her in which she stated and agreed that the sums
so paid should apply as payment of the balance in defendant's
hands. The referee found in favor of defendant.

*Elbridge T. Gerry* for the appellant. Defendant was not
competent as a witness in his own behalf. (*Logendyke* v.
*Logendyke*, 44 Barb., 366; *Cover* v. *Brook*, 21 id., 546;
*Dickerman* v. *Abrahams*, 21 id., 541; *Bass* v. *Bean*, 16

Howard, 93; *Yale* v. *Dederer*, 18 N. Y., 265; 22 id., 450; *Freethy* v. *Freethy*, 42 Barb., 369; *Gould* v. *Gould*, 39 How., 441; *Arborgast* v. *Arborgast*, 8 id., 297; *Smith* v. *Smith*, 15 id., 165; *R. Ins. Co.* v. *Noble*, 5 Abb. N. S., 355.) The statute of 1867 did not affect existing suits. (*Trist* v. *Cabenas*, 18 Abb., 143; *Hackley* v. *Sprague*, 10 Wend., 116; *Dash* v. *Van Kleeck*, 7 J. R., 486; *Snyder* v. *Snyder*, 3 Barb., 623; *Bates* v. *Stearns*, 23 Wend., 482.) The act has no retroactive effect so as to admit marital conversations had before it took effect. (*Dash* v. *Van Kleeck*, 7 J. R., 477; *Sandford* v. *Bennett*, 24 N. Y.; *Ratcliffe* v. *Wales*, 1 Hill., 63.) If the act controls pending proceedings it is an *ex post facto* law and void under the Constitution of the United States. (*People* v. *Humphreys*, 7 Johns., 314; *Gahagan* v. *The People*, 1 Parker Cr. R., 384; *Clayton* v. *Wardell*, 4 N. Y. R., 230; 1 Greenleaf Ev., § 339; 1 Hale P. C., 693; 1 East. P. C., 469; 1 Russell on Crimes, 218; 3 Greenleaf on Ev., § 206; *Calder* v. *Bull*, 3 Dallas, 389; *Cumming* v. *State of Mo.*, 4 Wal., 326.)

*William Henry Arnoux* for the respondent. Defendant was a competent witness. (*Minier* v. *Minier*, 4 Alb. Law J., 317.) The legislature has authority to enact a new rule in regard to evidence, and that does not affect vested rights. (*Neass* v. *Mercer*, 14 Barb., 318, 322.)

Folger, J.  1st. The first question made in this case is, whether the defendant was properly admitted as a witness in his own behalf and against the plaintiff, his wife.

It is claimed that the provisions of the act of 1867 (2d Laws of 1867, p. 2221), do not enable the defendant to become a witness against his wife in an action in which they are the only and antagonistic parties.

I have reached the opposite conclusion. It must be conceded that the object of the enactment was to alter the common-law rule which forbade the husband or wife being a witness for or against the other. Its object was to make avail-

able in the trial of issues the evidence of classes of witnesses whom the rules of the common law excluded. It designated these classes as " the husband of any party to the action," and as " the wife of any party to the action." It declared that all persons falling within these designations should be competent and compellable to give evidence, " the same as any other witness." It declared further, that they should be thus competent and compellable " on behalf of any party to the action." It is conceded that where the husband or the wife is a party to the action, and the other is not, that the husband or the wife, as the case may be, is within the language of the statute. But it is contended that this language does not disclose an intention that he or she may be a witness for or against the other, when both are parties to the action, antagonists in it.

I am at a loss to perceive where the language halts or suffers a change in its meaning, in going toward one purpose more than toward the other.

If the wife sues the husband, or *vice versa*, she is, and he is, in the language of the act, " any party thereto." She is, in the language of the act, " the wife of any party thereto." He is, in the language of the act, " the husband of any party thereto." And what other are the new classes of witnesses created by the statute, than the wives of parties to the action, and the husbands of parties to the action? And on whose behalf is it that these new classes of witnesses are competent and compellable to give evidence the same as any other witness, if not " on behalf of any party to such action?" Does not the husband, plaintiff or defendant, suing or sued by a wife, defendant or plaintiff, fall directly within a class of the witnesses newly privileged and designated by this statute? And is not a husband, plaintiff or defendant in such action, directly within the description of the one in whose behalf the husband or the wife of a party may be a witness? He is a party to an action in which a wife is the opposing party.

Certainly the letter of the law is met by the facts, and the facts are met and embraced by the letter of the law. Nor is any violence done to the letter of the law in applying it to a

case of husband and wife, parties against each other in an action.

I am well aware that as much might be said of the provisions of sections 398, 399 of the Code of Procedure. There the phrases, "no person offered as a witness," or "as a witness in any action" * * * "shall be excluded by reason of his interest in the event of the action," "or because he is a party thereto," * * * "a party to the action," "person for whose immediate benefit it is prosecuted or defended," and similar phrases, as they occur in the varying amendments to those sections or one of them, on a strict interpretation, would apply to a husband or to a wife, a party or interested, even though the opposing party be a husband or a wife.

And I am aware that it has been often held that from these phrases there could be no deduction of an intent in the legislature to abrogate the rule of the common law which excluded the husband and wife. And that further it was held, that it was not intended to remove existing disqualifications or to make a person a witness, *because* he is a party, when he would otherwise be incompetent; but only that, whatever not being a party, any one might have testified to, the same he might testify to, though made a party; that it was only intended to remove the disqualification of being a party, and not the disqualification of the marital relation.

This statute (of 1867) seems to be the complement in this respect of those sections of the Code, and as they were intended to remove the disqualification of being a party, so this is to remove the disqualification of being a husband or a wife, so that, under the Code and this act as one, there may be neither the disqualification of being a party nor that of being a married person. And it was admitted in many of these decisions, that the letter of the sections of the Code extended to and clearly embraced married persons when they were parties. (*Wehrkamp* v. *Willett*, 1 Keyes, 250; *Smith* v. *Smith*, 15 How. Pr. R., 165.) But the courts, venerating the common-law rule which prevented married persons being witnesses for

or against each other save in very exceptional cases, deemed it requisite that the legislature should, more explicitly than it had done in those sections, express an intention to abrogate that rule, before the judiciary should declare that it was broken. The decisions were put, not upon the lack of literal force in the statute, but in a reluctance to find in the words the intent to invade a rule so ancient and so thoroughly founded. It will be perceived that in the act of 1867, there is the same if not greater literal force than in the Code; while at the same time it must be conceded that by it, at the narrowest view of it, the common-law rule is beyond dispute seriously impaired. The reason of that rule was because of an identity of interest in husband and wife, wherefore they might not be witnesses for each other; and because of the closeness of the marriage relation and its mutual and unrestrained confidences, wherefore it was against public policy that they should be witnesses against each other, for that it tended to implacable quarrels and divisions. But the reason is ignored when a wife may be called by a stranger as a witness against her husband, or by her husband against a stranger, as much as when, being a party against her husband, she is sworn in her own behalf or is called by him to his advantage.

Then as to the intent of the act. So far we have noticed only the first section of the act. If it be thought, and it seems to have been so thought by a learned court, that the language of the first section does not fully convey an intent of the legislature to permit a husband or a wife to become a witness in an action in which they are opposing parties (*Minier* v. *Minier*, 4 Lansing, 421), it will be found, I think, that the second and third sections disclose that intention more completely.

In reading the statute it will be seen that the first section declares the general purpose of the legislature in enacting it. It appears however from the other sections, that in the terms used to declare this general purpose succinctly, more was comprehended than was designed to be sanctioned as a law. The second and third sections were added therefore, to confine somewhat the scope of the terms used generally in the first

section. The third section provides that no husband or wife shall be compelled to disclose any confidential communication made by one to the other during marriage. This is a limitation upon the general provision of the first section, that they should be compellable to give evidence the same as any other witness, and is a saving of somewhat of the policy of the common-law.

Then the second section makes also a limitation upon the enacting force of the first section, by providing that nothing in the act contained shall render any husband or wife competent or compellable to give evidence for or against the other in any action or proceeding instituted in consequence of adultery, or in any *action or proceeding for divorce on account of adultery*. Now we must concede that unless the legislature was knowingly doing a needless thing (which is not to be supposed), it had a purpose in enacting this last limitation. And it must have conceived, that by the force of the language used in the first section, a husband or a wife could give and be compelled to give evidence in an action for divorce on account of adultery. And as there can be no action for divorce on account of adultery, except it be brought by a wife against her husband or *vice versa*, the legislature must have conceived that the first section did enact that a wife or husband might give and might be compelled to give evidence for or against herself or himself in an action in which they two were the only parties. We can scarcely suppose that such would have been the conception of the legislature unless it had so intended.

And this interpretation is sustained by the authorities.

In 1860 (Laws of 1860, chap. 459, p. 787, § 12) the legislature amended the 399th section of the Code, so that it contained this phrase; "except that neither husband nor wife shall be required to disclose any communication made by one to the other."

It was held that this exception was a plain indication of the legislative intention to change or modify, by the section excepted from, the common-law rule as to the admissibility

of husband and wife as witnesses. (*Wehrkamp* v. *Willett*, *supra*; *Barton* v. *Gledhill*, 12 Abb. Pr. Rep., 246.)

Still further. Although the second section of the act of 1867 was evidently meant to be a restriction on the general effect of the first section thereof, and does not purport, further than that, to contain in itself any individual enacting force; yet it does make an exception from the restriction. It does reserve to the first section and to its enacting purpose, somewhat of that which by the full force of the restrictive terms of the second section would be taken from the first. The general restriction of the second section is, that neither the husband nor the wife shall be competent or compellable to give evidence for or against the other, in any criminal action or proceeding, nor in any action or proceeding instituted in consequence of adultery, nor in any action or proceeding for divorce on account of adultery.

The saving from this restriction is, " except to prove the fact of marriage in case of bigamy," and " except to prove the fact of marriage," in action for divorce, etc. It will scarcely be contended that this excepting clause would of itself have the enacting power to enable a husband or wife to prove the fact of marriage against the other in the cases specified. The enacting power is to be found in the other part of the act. And the form and collocation of the excepting clause are indicative of the belief, and consequently of the intent of the legislature, that the first section did enact that husband and wife might testify for and against each other in behalf of themselves. If a man demise a rectory, excepting the house, saving a chamber in the house to the lessee, the chamber passes by force of the lease. (*Leigh* v. *Shaw*, Cro. Eliz., 372.) The exception makes that excepted as though it never had been let; so a saving from the exception makes it as though it had never been excepted, and then it passed by force of the lease at first. (Id.)

So with this statute. If the first section did enact, the exception in the second section saved from the enactment, and the saving from the exception kept that which was saved

within the enactment. And thus is evinced the general intent of the legislature in the first section.

Such being the intent of the legislature in passing the act of 1867, the form of words used therein is, as we have seen, sufficient to make the enactment in that respect complete.

2d. The plaintiff contends, however, that the act was prospective, and could not affect this action, which had been commenced before it had passed.

The act is prospective; that is, had the defendant been sworn before its passage, it could not have looked back and have made good his testimony. But it was not confined in its operation to actions and proceedings to be commenced after its passage. It applied to them at once on its passage, so far as that, on all trials thereafter, the rule it had created was in force. " The very essence of a new law is a rule for future cases." But not for future *cases*, as meaning future *actions* exclusively, but future *occasions* as well. A case is in one sense, " a question contested before a court of justice." And here the question before this referee was, shall this defendant be sworn in his own behalf against the plaintiff, his wife? It arose after the passage of the act, and the provisions of the act applied to it.

It cannot be successfully contended, as a general rule, that an act which applies only to the forms of procedure, and modes of attaining or defending rights cannot be availed of in an action pending when it took effect. (*Neass* v. *Mercer*, 15 Barb., 318; *The People* v. *Mitchell*, 45 id., 208.)

3d. On the trial of the action, the defendant having been sworn and given some testimony as a witness in his own behalf, was asked, " What did the plaintiff say, if anything, respecting the employment of Dr. Reisig, on the payment of his bill ?"

To this question the plaintiff objected, as calling for conversations between husband and wife occurring prior to the act of 1867, and not affected by the terms of that act, but which were privileged by law at the time when they were had. The question was allowed, and the plaintiff had an exception.

And upon this objection the plaintiff here makes a point, that conceding that the act empowers the defendant after its passage to be a witness in his own behalf, rules of law which are consistent with that concession, will not allow that the defendant testify to any communications from the plaintiff received prior to the passage of the act.

The act itself would exclude them if they were confidential communications. But there is nothing of the nature of confidential or privileged communications in the matters here proved. They are the common-places of business and of every-day affairs, and such as pass hourly from a principal to his agent or purse-bearer, and were the same as would have been made by the plaintiff to any other person her agent.

But the point made by the plaintiff reaches further. And it is claimed that whereas, before the act of 1867, a husband could not, nor could a wife, testify to anything which had been communicated by the one to the other while the relation of marriage existed between them; that even if it be conceded that this act enables them to be witnesses in their own behalf and against each other, yet the rule of the common law still maintains, and that they are not yet privileged to speak as witnesses of any matter derived by one from the other while they were husband and wife, and before the passage of the act.

It has been held that the restriction of the common law went to the length that no matter, confidential or otherwise, could be disclosed. (*Burrell* v. *Bull*, 3 Sandf. Ch. R., 15, citing *O'Connor* v. *Majoribanks*, 5 Scott N. R., 394. And see Phillips on Ev., 5 Am. ed., 64, margin 79.)

And it has been further held, that though death or divorce has ended the marriage relation, still the survivor cannot, nor can either of the divorced parties, thereafter speak as a witness to any communication, confidential or otherwise, received during its existence (*O'Connor* v. *Majoribanks, supra*); though a communication received or facts learned after divorce may be testified to. (Id.)

And then it is argued that the act of 1867 stands in the place of death and divorce, and does in that it permits hus-

band and wife to be witnesses for and against each other and in the behalf of either, in effect and so far dissolve the marriage relation, and is analogous to death or divorce.

But this position cannot be sustained. The reason for the decision in *O'Connor* v. *Majoribanks* was that the policy of the common law must be upheld, which was to create and continue in marriage a unity of interest and affection by preventing the excitement and ill feelings it supposed likely to arise if one of the married gave testimony upon any matter to the detriment of the other. This policy was to be maintained not for the sake of the past. That was secure. Nor always because there was anything like a right peculiar to the parties, to have the mouths of each other always closed. For in a case where the husband was willing that the wife should be examined in an action against him, Lord HARDWICKE refused, because it was against the policy of the law to allow a woman to be a witness either for or against her husband. (*Barker* v. *Dixie*, cited Daniell's Ch. Pr., 4th Am. ed., p. 849. Also see Greenl. on Ev., sec. 340, and cases cited.)

It was to be maintained for the sake of the present and the future, that by an adherence to the rule for the public good, married folks might be assured of secrecy. Neither death nor divorce could abrogate the rule. So it continued imperative upon the courts and must after death or divorce be enforced for the sake of the public, though it could no longer help or harm the parties. But the statute in question discards the rule of the common law and abrogates it, and for us, save as to confidential communications, it no longer exists. Husband and wife may now and for the future be witnesses as to all which passes between them not having that quality. Hence there remains no reason why courts should so rule as that husband and wife may in the present and future be assured that the ordinary communications of business are to be privileged and confidential.

4th. The plaintiff makes the further point, that the act of 1867 is an *ex post facto* law, in violation of the Constitution of the United States, and void.

The provision of the federal Constitution to which the plaintiff refers (that no State shall pass any *ex post facto* law), is not applicable to civil laws which affect private rights exclusively; but to penal and criminal laws, which impose punishments or forfeitures, for acts indifferent in themselves when committed, by a law subsequently passed. (See cases cited by JEWETT, J., in *Burch* v. *Newberry*, 10 N. Y., 374–91.)

And even if it be conceded (though it is not), that so much of this act as provides a rule of evidence in criminal cases is obnoxious to the constitutional provision, yet that is separable from and independent of the rest of the statute, and though it fall, the rest of the statute will stand.

5th. Nor is there anything in the case to show that the defendant, as is claimed by the plaintiff, held toward her in this matter the relation of a technical trustee. The complaint alleges, that he was her agent in the receipt into his hands of this money. The answer avers that, as her husband, he received from her and had charge and custody thereof. The referee finds, that she voluntarily placed in his hands these moneys, and does not find that the transaction had anything in it of the nature of a trust. The testimony does not clash with this finding.

6th. This court cannot review the action of the court below in making an extra allowance to the defendant in addition to his taxable costs. It does not appear to have exceeded the maximum limit fixed by the Code.

The other points made in this court by the plaintiff are to the findings of the referee upon questions of fact. The testimony is sufficient to uphold the findings.

The judgment must be affirmed, with costs to the respondent.

All concur.

Judgment affirmed.