(27 Misc. Rep. 339.)

### MAHONEY v. BERNHARDT et al.

(Supreme Court, Special Term, New York County.    May, 1899.)

1. BANKS—STOCKHOLDERS' LIABILITY—ACTIONS BY CREDITORS—ABATEMENT—STATUTES—REPEAL.

Laws 1897, c. 441, providing that all proceedings to enforce the individual liability of stockholders for the debts of a bank "shall be" prosecuted only in the name of the receivers, where receivers willing to prosecute such proceedings have been appointed, does not abate an action commenced by a creditor under Laws 1892, c. 689, § 52, against stockholders of an insolvent bank, before the passage of the chapter, though receivers have been appointed, and only a part of the stockholders were served with summons before such passage, in view of Laws 1892, c. 677, § 31, providing that the repeal of a statute shall not affect an act done prior thereto.

2. SAME—PARTIES—RECEIVERS.

Receivers of an insolvent bank are not necessary parties in an action by a creditor against the stockholders under Laws 1892, c. 689, § 52, commenced prior to the passage of Laws 1897, c. 441, requiring the receivers to bring such actions.

3. SAME—RESIDENT AND NONRESIDENT STOCKHOLDERS.

Under Laws 1892, c. 689, § 52, making the stockholders of an insolvent bank "individually responsible equally and ratably, and not one for the other," for the bank's debts, a creditor of such a bank may sue such stockholders as are residents, and omit others who are nonresidents.

4. SAME—TRANSFER OF STOCK—EXECUTOR.

Under Laws 1892, c. 689, §§ 52, 53, making a person in whose name bank stock stands at the time of the bank's insolvency liable as a stockholder for its debts, an executor is liable where bank stock was in intestate's name when the bank became insolvent, though the executor had transferred the shares to himself as trustee, pursuant to the surrogate's decree, before the failure of the bank, where such transfer was not made on the books of the bank.

5. SAME—ACTION DURING RECEIVERSHIP.

A creditor's action may be maintained to collect the individual liability of stockholders of an insolvent bank, under Laws 1892, c. 689, before the receivers have finally wound up the bank's affairs, where it is shown that the deficiency will exceed the amount for which the stockholders are liable.

Action by Timothy Mahoney against George Bernhardt and others.    Decree for plaintiff.

Henry D. Hotchkiss, for plaintiff.

A. C. Thomas, for defendant Owens.

Simpson & Werner (Angel J. Simpson, of counsel), for defendants Bradbury, Hopkins, Shriver, Watrous, and Willson.

Louis Marshall and A. L. & S. F. Jacobs, for defendants Card-well and Davenport.

W. C. Breed, for defendants Hobbs and Odell, Jr.

Feitner & Beck (Edwin S. Babcock, of counsel), for defendants Diehl and Carney.

F. A. Winslow, for defendants George Bernhardt and George J. Bernhardt.

George F. Martens, for defendant Bruns.

Lewis S. Goebel, for defendant Buchtenkisch.

Field & Deshon, for defendant Adeline W. Chatterton.

H. B. B. Stapler, for defendant Julia M. Clyde.

John T. Fenlon, for defendants Cunningham and Rique.

Henry W. Wheeler, for defendants Cohen and Goppoldt.

W. J. Boyhan, for defendant Crandall.

Dittenhoefer, Gerber & James, for defendants Darling and Ford.

Philbin & Beekman, for defendant Donohue.

W. O. Gantz and C. E. Meier, for defendant Donovan.

John Delahunty, for defendant Hatfield.

Adam Wiener, for defendant Greenbaum.

O. S. Ackley, for defendants Heimburg, Kraft, and Vossler.

M. J. Scanlan, for defendant Katz.

Salter & Steinkamp, for defendants Klinker and Steinkamp.

M. A. Kursheedt, for defendant Kursheedt.

N. B. Sanborn, for defendant Leather Manufacturers' Nat. Bank.

S. B. Livingston, for defendant R. F. Livingston.

Sammis & Bierck, for defendant Lynch.

T. J. L. McManus, for defendant Thomas McManus.

George E. Mott, for defendants Mott and Davies.

Thomas D. Robinson, for defendant Morrison.

E. Arnstein, for defendant Metzger.

A. L. Martin, for defendant Nette.

W. P. & R. K. Prentice, for defendants O'Donohue and others.

C. E. Lydecker, for defendant Schuyler.

Opdyke, Willcox & Bristow, for defendant Stivers.

Kurzman & Frankenheimer, for defendant Helene Westheimer.

Benjamin Wright, for defendant Robert J. Wright.

SCOTT, J. This is a representative action by the plaintiff, as a creditor of the Murray Hill Bank, against the stockholders, to recover from each the par value of their stock, or so much thereof as may be necessary, in addition to whatever may be realized by the receivers to pay the claims of the creditors. The Murray Hill Bank was organized on August 29, 1870, under the provisions of chapter 260, Laws 1838. On April 11, 1878, the capital of the bank was reduced to $100,000. It has never been a bank of issue. On August 11, 1896, the superintendent of banks took possession, and closed the doors, since which time the bank has never resumed business. In the same month two actions were begun looking to the dissolution of the bank and the appointment of receivers. One of these was instituted by the directors and one by the attorney general. The directors' action was, after some litigation, dis-

missed on the ground that it had been superseded by the attorney
general's action. In this latter action temporary receivers were
appointed on September 12, 1896, and a judgment of dissolution
was entered on October 12, 1896. Permanent receivers were ap-
pointed on February 24, 1897, and such receivers duly qualified,
and have continued to act until the present time. From the evi-
dence given on the trial it clearly appears that, while the exact
difference between the collectible assets of the bank and the valid
claims against it cannot yet be determined, still there must cer-
tainly be a deficiency far exceeding the par value of the whole cap-
ital stock of the bank. The present action was commenced by the
service of the summons and complaint on 11 of the defendants on
December 6, 1896. Service upon other defendants was made on
various days during December, 1896, and January, February, and
March, 1897. The permanent receivers not having been appointed
at the time the action was commenced, they, of course, were not
made parties. Subsequently, however, pursuant to an order of the
appellate division of this court, entered on the 20th day of May,
1898, an amended and supplemental summons and complaint was
served, bringing in the receivers as defendants, and making certain
other changes in the parties to the action.

Under the provisions of the banking law (Laws 1892, c. 689) as
it stood at the time this action was commenced a suit against
stockholders for a contribution could only be maintained by a cred-
itor or creditors. On May 17, 1897, before the receivers had been
made party defendants, and before all the present defendants had
been served with the summons and complaint, the legislature
amended section 52 of the banking law so as to provide that ac-
tions like the present should be taken and prosecuted only in the
name and on behalf of the receiver or receivers, if any such should
have been appointed, unless after request such receiver or receiv-
ers should have refused to prosecute. Numerous reasons have-
been assigned why this action should not be sustained either
against any of the defendants or against individual defendants
who claim exemption from liability upon grounds specially appli-
cable only to themselves. The objection which is insisted upon
most strenuously by all the defendants is that the amendment to
the banking law passed on May 17, 1897, so operated upon this
action as to forbid its further prosecution, and to vest in the re-
ceivers alone the right to pursue the stockholders for contribution.
Section 52 of the banking law, as it stood when this action was
commenced, provided as follows:

"Except as prescribed in the stock corporation law, the stockholders of every
such [banking] corporation shall be individually responsible, equally and ratably,
and not one for another, for all contracts, debts and engagements of such cor-
poration, to the extent of the amount of their stock therein, at the par value
thereof, in addition to the amount invested in such shares. * * *"

This section, as has repeatedly been held, conferred a right of
action upon the creditors. The amendment of 1897 (chapter 441)
added to the words above quoted the following:

"In case any such corporation shall have been, or shall be dissolved by final
order or judgment of a court having jurisdiction, and a permanent receiver or

receivers of the said corporation shall have been or shall be appointed, all actions or proceedings to enforce the liability of stockholders under this section shall be taken and prosecuted only in the name and in behalf of such receiver or receivers, unless such receiver or receivers shall refuse to take such action or proceeding upon proper request in that behalf made by any creditor, and in that event such action or proceeding may be taken by any creditor of the corporation."

The defendants, while conceding that in general a statute is to be construed only as operating prospectively, contend that this rule is not inflexibly applied to remedial statutes, and such they deem the amendment of 1897 to be. They point out that it does not undertake to abrogate or lessen the liability of stockholders in favor of creditors, but simply changes the form of action by which that liability can be enforced; and many cases are cited in support of the argument that the statute of 1897, being merely one prescribing a new method of enforcing a liability already existing, should be so construed as to affect even actions which had been commenced before it became a law. To the contention there seem to be several answers. Even where the power of the legislature to give retroactive operation to a statute is unquestioned, it will not be held to have exercised that power unless it has declared its purpose in plain and unmistakable language. People v. O'Brien, 111 N. Y. 60, 18 N. E. 692; Dash v. Van Kleeck, 7 Johns. 477; Benton v. Wickwire, 54 N. Y. 229. I find nothing in the language of the amendment to indicate an intention on the part of the legislature to affect pending actions. It provides that proceedings to enforce the liability of stockholders "shall be" taken and prosecuted only in the name of the receiver or receivers. These words are applicable to the future,—to something that is to be done in a particular way after the passage of the act. It is true that the cases in which such proceedings may be so taken are those in which a corporation "shall have been or shall be" dissolved, and permanent receivers "shall have been or shall be" appointed. But this use of these words only indicates an intention that proceedings thereafter to be "taken and prosecuted" shall be in the name of the receivers, whether the dissolution occurred and the receivers were appointed after or before the adoption of the amendment. In other words, if no action had been commenced by a creditor prior to May 17, 1897, any action thereafter commenced against the stockholders of the Murray Hill Bank would have had to be brought by the receivers, although the bank had been dissolved, and the receivers appointed, before the passage of the amendatory act. Many of the decisions relied upon by the defendants have reference to statutes affecting procedure or evidence, and were not, properly speaking, given a retrospective effect, for, while the actions in which the decisions were made were pending when the amendatory statutes were passed, the contingency calling for the application of those statutes did not present itself until afterwards. Thus, in Lazarus v. Railroad Co., 145 N. Y. 581, 40 N. E. 240, after the cause had been submitted to the referee, but before proposed findings had been submitted to him, the legislature passed chapter 688 of the Laws of 1894, amending the Code of Civil Procedure so as to repeal the provision requiring a referee to

pass upon proposed findings. The court of appeals held that this amendment relieved the referee from the performance of the duty which, when the action was commenced, was imposed by law; but in so holding it expressly did so upon the ground that such a construction of the amendment would not give it a retroactive effect. The court said on this point:

"But, so far as the repeal operated upon the referee, it simply relieved him from a duty not yet performed, and which he was not bound to perform until the decision. The statute prescribed his duty in a certain contingency, and before the performance of the duty became imperative, and before he had performed it in fact, the legislature repealed the statute imposing the duty. The statute, as to him, was prospective, and not retrospective."

So, also, in Southwick v. Southwick, 49 N. Y. 510, where, after an action had been brought by a wife against her husband, a stat-- ute was passed permitting either to testify against the other in an action between them, it was held to be applicable to all trials held after the act took effect, even in cases commenced before the passage of the act; but the court was careful to explain that such a construction gave to the act what was really only a prospective effect. If, however, there could be any doubt as to the construction and effect of the amendment of May 17, 1897, considered in the light of adjudicated cases, the question would seem to be set at rest by the provisions of section 31 of the statutory construction act (Laws 1892, c. 677). The amendment of May 17, 1897, to section 52 of the banking law was, in effect, so far as concerned the right of a creditor to pursue the remedy in his own name, a repealing act. Prior to the amendment, the section contained within its lines statutory authority for the prosecution of an action like the present by a creditor. The amendment revoked that authority, and to this extent repealed the section as it originally stood. Section 31 of the statutory construction act provides for just such a case, as follows:

"The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provision was not so repealed."

These provisions are general, and apply to all legislation adopted after 1892. People v. New York Cent. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312. They are, therefore, to be read into the amendment to the banking law, passed on May 17, 1897, and, being so read, they preserve the plaintiff's right to prosecute this action to final judgment.

It is also urged that this action was improperly brought, because the receivers were not originally made parties to it. I am unable to see why the receivers were necessary parties prior to the amendment of 1897. Until that time they had no interest whatever in the controversy between the creditors and the stockholders. None of the money recovered was to pass through their hands, their only

duty being to account for the assets of the corporation received by them. A necessary party to an action is one without whose presence a substantial decree cannot be made; and as the law stood at the time this action was commenced the receivers certainly were not necessary parties within this rule. It is true that the court of appeals has said that they were proper parties to such an action (Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997), but this is quite different from saying that they are necessary parties. It might have been convenient to have them in the action to facilitate the proof which the plaintiff is bound to make that a contribution from the stockholders was necessary to discharge the liabilities of the bank, but such proof could easily be made without the presence of the receivers as actual parties to the litigation. Nor is it a defense to the action that all the stockholders were not served with process prior to May 17, 1897. If the action was well brought in the name of a creditor, it was a pending action when the amendment of 1897 was enacted. It is admitted that it was not the intention of the legislature by that amendment to relieve any stockholder from liability, but merely to modify the form of action for the enforcement of the liability. As I have already attempted to show, the effect of the amendment was not to abate the action as to those stockholders, at least, who had been served prior to May 17, 1897; and, unless the other stockholders could be brought into the action already commenced by service after the date of the amendment, we should have the confusing result of one action by a creditor against certain stockholders, and another by the receivers against other stockholders. Th language already quoted from section 31 of the statutory construction act seems broad enough to prevent this result. It also appears that certain persons who were stockholders of the bank were nonresidents, and have since the commencement of the action been, by order, stricken out as defendants. It is urged that by reason of their absence this action cannot proceed against any of the stockholders. It is not easy to see how the omission of any stockholder or any number of stockholders as defendants in an action of this character can work in any way or to any degree to the prejudice of those stockholders who are made parties. The liability of stockholders, which is wholly the creation of statute, is that they shall be individually responsible equally and ratably, and not one for another, for the debts of the corporation, to the extent of the amount of their stock therein. The result is that each stockholder is liable for that proportion of the sum for which all the stockholders are liable which his stock bears to the whole capital stock. Thus, if any stockholder owns 10 per cent. of the stock of the bank, his liability is limited to the per cent. of the total indebtedness, not to exceed in any event the par value of his stock; and the proportionate liability cannot be affected in any way, either to increase it or to lessen it, by the fact that some other stockholder is not called upon to contribute. Whatever loss may be occasioned by the failure to include all the stockholders as defendants will fall, not upon the stockholders who are sued, but upon the plaintiff and the other

creditors whom he represents. Certainly, in the present case, this defense ought not to succeed, for the stockholders omitted appear to be nonresidents, so that personal service cannot be made upon them. Angell v. Lawton, 14 Hun, 70; Id., 76 N. Y. 540. It is true that under subdivision 7 of section 438 of the Code of Civil Procedure the plaintiff might have obtained an order for substituted service of the summons on the nonresident stockholders, but a judgment obtained after such service would have been of no avail, either to the plaintiff or to the other defendants, unless, indeed, —as does not appear to be the case,—the nonresidents had property in this state out of which judgment against them could be satisfied.

Two former stockholders—Henry Clausen and Samuel Cardwell —had died before the failure of the bank, owning shares of stock. The legal title to the stock thereupon passed to their respective executors. In each case the executors had, before the commencement of this action, and, indeed, before the failure of the bank, submitted their accounts to the surrogate, and, pursuant to his decree, had transferred to themselves, as trustees, the shares of the bank stock. They had, however, never caused such transfer to be made upon the books of the bank. Under sections 52 and 53 of the banking law, the person in whose name stock stands at the time of the insolvency of a bank is made liable as stockholder for its debts, if the stockholders are liable at all. To the ownership of bank stock always attaches by law, in this state, the liability to contribute to pay the debts of the bank. The executors could have protected themselves against this liability by causing the stock to be transferred out of their names on the books of the bank, or by taking security, by way of reservation of assets or otherwise, to protect themselves against liability. Having done neither, they must abide by the consequences, recouping themselves, if they can, by recourse to the transferees. The plaintiff was not bound to look further than the stock book to ascertain who were holders of the stock.

To other objections taken upon the trial it is not necessary to refer, since, so far as this court is concerned, they have been settled by decisions rendered by the appellate division and the court of appeals in similar actions against the stockholders of other banks.

Certain questions have also been raised as to whether or not some of the defendants were actually stockholders, within the purview of the statute, when the liability attached. Such questions can best be answered upon the application for final judgment, when all the facts will be before the court, at which time can also be decided the question whether the contributions realized from the stockholders should or should not be paid over to the receivers for distribution.

Having considered and discussed, so far as necessary for the purposes of an interlocutory decree, the objections urged against the maintenance of the action in its present form, it remains to be considered whether the proof offered upon the trial entitles the plaintiff to relief. In Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E.

997, it was held that, in order to maintain such an action, the plaintiff must show that he was a creditor of the corporation, that the corporation was insolvent, and that a contribution from the stockholders was necessary in order to discharge the liabilities of the bank. The evidence that the plaintiff was a creditor of the bank, and that it was insolvent, was complete; and I do not understand that any defendant seriously questions these facts. The evidence was also conclusive that the assets of the bank which have been or can be collected by the receivers will be insufficient to discharge its liabilities. How great the deficiency will be cannot be determined until the receivers have rendered their final accounts; but it is unimportant what the precise deficiency will be, if it shall appear, as the evidence already taken seems to indicate, that the deficiency must, in any event, exceed $100,000, the par value of the whole capital stock of the bank. That amount limits the liability of the stockholders, and, if it is certain that the ultimate deficiency of assets will exceed that sum, there is no reason why the creditors' remedy against the stockholders should be postponed until the receivers have finally wound up the affairs of the bank. The evidence upon the trial also showed that all the defendants except the receivers were either stockholders of record at the time the bank failed or the personal representatives of such stockholders. The plaintiff is entitled to an interlocutory decree adjudging the defendants who were stockholders at the time the bank failed to be individually responsible equally and ratably, and not one for the other, for any deficiency between the total indebtedness of said bank and the total value of its assets to the extent of the amount of their stock therein at the par value thereof. The decree should also provide for the appointment of a referee to take evidence and report to the court: (1) Who are the creditors to whom the stockholders are liable, and what are the amounts of their respective claims remaining unpaid; (2) who were the stockholders of the bank at the time its insolvency was adjudged, and what was the par value of the stock held by each stockholder; (3) whether the deficiency of assets of the bank will certainly exceed $100,000, and, if not, how large the deficiency will be.

Ordered accordingly.